# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FURSTPERSON, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 1814 |
| | ) |
| **ISCOPIA SOFTWARE, INC.,** | ) |
| | ) |
| Defendant. | ) |

_____

| | |
|---|---|
| **ISCOPIA SOFTWARE, INC.,** | ) |
| | ) |
| Counter-Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| **FURSTPERSON, INC., et al.,** | ) |
| | ) |
| Counter-Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff/Counter-Defendant FurstPerson, Inc.'s (FurstPerson) motion to dismiss Counts III and V of Defendant/Counter-Plaintiff Iscopia Software, Inc.'s (Iscopia) counterclaim. For the reasons stated below, we grant the motion to dismiss in its entirety.

1

# BACKGROUND

In 2002 FurstPerson entered into an agreement (Agreement) with Sand-Ho Software, Inc. (Sand-Ho) under which FurstPerson was authorized to use Sand-Ho's internet-based psychometric testing service and, in connection with the Agreement, Iscopia agreed to provide technical and development support and to host FurstPerson's backup data server. The Agreement was in effect December 1, 2004, through November 30, 2005, and automatically renewed in December 2005 and December 2006. On August 31, 2007, Iscopia allegedly provided notice to FurstPerson that Iscopia would not renew the Agreement for a new term beginning in December 2007. Despite such notice, Iscopia allegedly continued providing services under the Agreement after December 2007. FurstPerson claims that beginning in 2008, it began experiencing service problems with the Iscopia system. In February 2008 Iscopia allegedly presented FurstPerson with notice of a price increase and FurstPerson allegedly rejected the proposed price increase. The parties allegedly engaged in ongoing negotiations and in September 2008 FurstPerson experienced a system outage for the Iscopia services lasting approximately 20 hours. The outage allegedly caused significant harm to FurstPerson's business. For example, FurstPerson allegedly lost one major client due to the outage. In October 2008, FurstPerson and Iscopia allegedly engaged in further negotiations regarding a new

long-term agreement. Problems allegedly continued with the operation of the Iscopia systems. FurstPerson claims that in early December 2008, it entered into a temporary agreement with Iscopia because FurstPerson feared that Iscopia would terminate its services and thus cause further interference with FurstPerson customer relationships. FurstPerson claims that on December 16, 2008, under financial pressure and duress, it entered into a written revised agreement (Revised Agreement) with Iscopia. FurstPerson contends that due to Iscopia's demands for price increases, FurstPerson decided to create its own technology platform. FurstPerson claims that it expended its own time and resources to develop the technology and did not use any of Iscopia's source codes, trade secrets, or technology.

In February 2009, there were allegedly additional problems with the Iscopia system and FurstPerson claims it learned that Iscopia improperly programmed its technology resulting in thousands of errors for users. FurstPerson contends that since Iscopia had made such mistakes, it had not performed its obligations under the Revised Agreement and FurstPerson provided notice of its intent to terminate the Revised Agreement. FurstPerson then allegedly terminated the Revised Agreement. FurstPerson contends that Iscopia then attempted to steal FurstPerson's customers by sending them a letter that informed them that Iscopia could begin offering its services to them. In October 2006, Iscopia allegedly filed for a patent application in regard to

its services. FurstPerson contends that as part of the patent application process, Iscopia published on the internet confidential FurstPerson information. FurstPerson claims that Iscopia continues to threaten to interrupt further service and using confidential information gained from FurstPerson to solicit business from FurstPerson's customers. FurstPerson seeks a preliminary injunction to prevent such continued alleged wrongdoing by Iscopia. FurstPerson includes in its complaint a breach of contract claim (Count I), a declaratory judgment claim (Count II), a tortious interference with contractual relationship claim (Count III), a trade secret misappropriation claim relating to FurstPerson's customer list (Count IV), a trade secret misappropriation claims relating to FurstPerson's newly developed technology (Count V), and an unfair competition claim (Count VI).

Iscopia has also filed a counterclaim against FurstPerson, Jeff Furst (Furst), the President of FurstPerson and Michelle Cline (Cline), a Vice President of FurstPerson, contending that Iscopia honored its obligations under the Revised Agreement. Iscopia contends that FurstPerson has wrongfully failed to pay Iscopia for prior services. Iscopia also contends that FurstPerson used Iscopia's technology and trade secrets, and data to formulate FurstPerson's new system that is intended to eliminate the need for Iscopia's services. Iscopia also contends that FurstPerson has infringed upon Iscopia's copyright. Iscopia includes in its counterlaim a breach of

4

contract claim brought against FurstPerson (Count I), an Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, claim brought against all Counter-Defendants (Count II), a copyright infringement claim brought against all Counter-Defendants (Count III), a Computer Fraud and Abuse Act, 18 U.S.C. § 1030, claim brought against all Counter-Defendants (Count IV), and a Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, claim brought against all Counter-Defendants (Count V). FurstPerson now moves to dismiss Count III of the counterclaim and Count V in the counterclaim to the extent that it is brought against Furst and Cline individually.

## LEGAL STANDARD

In ruling on a motion to dismiss, a court must "take all of the factual allegations in the complaint as true" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted) (emphasis in original)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009)(stating

5

that "*Iqbal* reinforces *Twombly*'s message that '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'")(quoting in part *Iqbal*, 129 S.Ct. at 1949). A plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").

      Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if

6

the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946. For the purpose of determining subject matter jurisdiction, this court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

**DISCUSSION**

I. Copyright Infringement Claim (Count III)

FurstPerson contends that this court lacks subject matter jurisdiction over the copyright infringement claim brought by Iscopia since it is undisputed that Iscopia has not yet obtained a registration for its copyrights. Pursuant to 17 U.S.C. § 411(a) (Section 411(a)), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made. . . ." 17 U.S.C. § 411(a). As the parties point out, there is no

controlling precedent regarding the issue of whether a copyright registration is a jurisdictional prerequisite for a copyright infringement claim. Iscopia asks the court to adopt the position that its applications for copyright registrations are sufficient to provide this court with jurisdiction over its copyright infringement claim. FurstPerson argues that this court lacks subject matter jurisdiction since Iscopia's applications have not been approved and there has not been any acknowledgment of Iscopia's ownership over the information at issue. We conclude that the mere application for a copyright registration is not sufficient to support a copyright infringement claim. *See Brooks-Ngwenya v. Indianapolis Public Schools*, 564 F.3d 804, 806 (7th Cir. 2009)(indicating that "[t]he Supreme Court has granted certiorari to decide whether compliance with the registration requirements is a precondition to the subject-matter jurisdiction of the federal courts"); *Automation By Design, Inc. v. Raybestos Products Co.*, 463 F.3d 749, 753 n.1 (7th Cir. 2006)(stating that "[r]egistration is not a condition of copyright protection, but is necessary before an infringement suit may be filed in court"); *Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir. 2004)(stating that "an application to register must be filed, and either granted or refused, before suit can be brought" for a copyright-based action); *Pickett v. Prince*, 207 F.3d 402, 404 (7th Cir. 2000)(stating that "registration not being a precondition to copyright protection, 17 U.S.C. § 408(a), though it is a precondition

to a suit for copyright infringement"). We agree with the other rulings in this district that have dismissed copyright infringement claims based on a lack of subject matter jurisdiction where the plaintiffs lacked copyright registrations. *See, e.g., Nova Design Build, Inc. v. Grace Hotels, LLC*, Case Number 07 C 6369, 5/15/08 Memorandum Opinion (DE 52); *Markovitz v. Camiros, Ltd.*, 2003 WL 21517364, at *2 (N.D. Ill. 2003)(stating that "[t]he failure to obtain copyright registration bars a plaintiff from bringing suit under the Copyright Act"); *Leventhal v. Schenberg*, 2004 WL 1718512, at *2 (N.D. Ill. 2004)(stating that the court was "without subject matter jurisdiction, and the Complaint must be dismissed"). Therefore, since Iscopia has not yet obtained a registration for its copyrights, we grant the motion to dismiss the copyright infringement claim in the counterclaim (Count III).

## II. Lanham Act Claims (Count V)

FurstPerson argues that Iscopia has not sufficiently pled a Lanham Act claim against Furst and Cline individually. FurstPerson contends that to hold individuals liable under the Lanham Act, there must be a special showing of improper motives by the individuals acting outside the scope of their corporate duties. FurstPerson cites in support *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 946 (7th Cir. 1926). *Dangler* provides that for individual liability there must be involvement "willfully

and knowingly-that is, when [the individual] personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability-that officers are held jointly with the company." *Drink Group, Inc. v. Gulfstream Communications, Inc.*, 7 F. Supp. 2d 1009, 1010 (N.D. Ill. 1998)(quoting *Dangler*, 11 F.2d at 947); *see also, e.g., Specht v. Google, Inc.*, 2009 WL 2407749, at *4 (N.D. Ill. 2009)(citing *Dangler* and *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir. 1972) for the proposition that "[a]s a general rule, corporate officers are not held personally liable for infringement by their corporation when they are acting within the scope of their duties"); *Syscon, Inc. v. Vehicle Valuation Services, Inc.*, 274 F. Supp. 2d 975, 976 (N.D. Ill. 2003)(stating that "*Dangler* remains the law of this Circuit"). Iscopia contends that it has provided sufficient allegations concerning the personal involvement of Furst and Cline in Paragraphs 52, 55, 58, 59, 89, 90, and 101 of the Counterclaim. While such paragraphs detail the alleged personal involvement of Furst and Cline in the alleged wrongdoing, they do not plausibly suggest the type of willful conduct outside the scope of their duties that is necessary for individual liability. *See Specht*, 2009 WL 2407749, at *4 (holding that allegations of personal

involvement were not sufficient to state a claim); *Drink Group, Inc.*, 7 F. Supp. 2d at 1010)(noting the "absence of allegations that, at the time of incorporation, [the individual defendants] were motivated by some improper purpose or acting outside the scope of their corporate duties"). Therefore, we grant the motion to dismiss the Lanham Act claim (Count V) in the counterclaim to the extent that it is brought against Furst and Cline individually.

## CONCLUSION

Based on the foregoing analysis, we grant FurstPerson's motion to dismiss the copyright infringement claim (Count III) and the Lanham Act claim (Count V) in the counterclaim to the extent that it is brought against Furst and Cline individually.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 10, 2009